Good morning, your honors. If it pleases the court, my name is Kevin Murch and I represent Cesar Carvajal. This is an ADA case that was tried down in San Diego. The issues aren't really earth-shattering. They mostly focus on whether or not a jury instruction should have been given under the ADA. The way it basically works is that under the ADA, there are two pattern jury instructions that may be given. One of the pattern jury instructions deals with whether or not a person can work or it deals with work. And the second one deals with, I'm trying to get my notes here, it deals with actually life issues. So in this case, there had to be a determination made as to whether or not my client was disabled. With respect, counsel, as I look at it, it looks like instruction number 14 properly stated the elements included in the requirement that your client had a disability. And instruction 15 then defined disability in a way basically right from the statute. What was wrong with that? Well, there were two definitions of a disability. And then in the verdict form... There was a definition of disability in the instruction number 15. Where was the other one? It was 18 and 19, 12.4 and 12.5 of... I mean, 15 said defined disability as an, in quotes, physical or mental impairment that substantially eliminates, excuse me, limits one or more of the major life activities of such an individual. That's almost right out of the statute, isn't it? It is. But then it defines major life activity two ways. There's a major life activity as being major life activity to work. And then there's a major life activity to do manual activities. And what should have happened is our client should have had only one of those two jury instructions. The major life activity to do manual things, not the major life activity of work. So you wanted 18 eliminated? Yes. Jury instruction number 18 eliminated? Yes, ma'am. Right. Was there anything precluding Mr. Kavahal from arguing that his substantial limitation was only as to manual tasks? Well, yes. He had worked for Pride for a long time. He was a laborer. So there was no industry that you could look across a broad range of jobs and say that he couldn't get one of those jobs somewhere. And we believe that that's what the jury did. The jury looked at this, you know, because there's two definitions, one right after the other. And we believe the jury looked at the ability of my client to be able to get a job somewhere in an industry. Obviously he could. He went on the stand and he said, I think that he was a security guard. But that wasn't the test. The test was, did he have a major quality of life problem? And he did. He could not work at Pride under all the jobs that he was asked to work at Pride. He had received a doctor's note that said that he could not climb, that said that he should not be on ladders, that said that he shouldn't walk too much, that said he shouldn't be in the freezer for eight hours at a time. Those kinds of things were going on. But my question to you is that if your theory was that the major life activity that you're relying on was with regard to manual clear that you could explain to the jury that that was the theory that you were relying on? We did, but we said and we brought forward evidence of that, that he couldn't do the act for the job. He had to be given an accommodation. Now you're saying that, and I understand it, that we should have argued that because we did. Our whole case was arguing that. I'm looking at the Instruction 19. It says when the major life activity under consideration is the ability to perform manual tests, the impairment of that ability must and so on and so forth. And your argument to the jury was that is the major life activity that's at issue here. And that's what you should focus on. And you're saying, well, because of the prior instructions, at least with respect to 15, well, I guess it's not 15, but anyway, in 15 it says major life activities are the normal activities and so on, which includes working. So they knew that there was a broader concept, but work as a major, you were complaining because work as a major life activity was too broad. It went beyond manual tasks, but manual tasks is, as I read it, so it goes from the very general to the work to the manual tasks. So as long as 15 is in there, how does the 18? The reason it doesn't work in 18, if I'm, I'm sorry to interrupt you. The reason it doesn't work, 18 says that essentially he cannot get a job across this broad spectrum of major life activity slash work. And he could get a job. So what the pattern jury instructions for the Ninth Circuit say, they say that the second one should be given, which is the major life activity of doing something, that walking, being able to walk, being able to climb a ladder, if they cannot do that, then that's enough to create a disability. Even in the pattern jury instructions under their comment, they say that those two should not be given together, those jury instructions, and we argued that. But the district court at ER 230 responded to that, and I've been sitting in your response. They said, as far as the plaintiff's concerned, to the extent that the plaintiff's theory is that we are not operating on that, they're referring to the work, that the major life activity was working so much as tasks, manual tasks. And you are free in your closing argument to point the jury to that instruction and let the jury know what your theory is. And did you have any problem with that? Do you object to that? I did object to it, because there were two jury instructions. We argued it in a separate motion. We pled it. And when all the, the only evidence that was in, that we had brought out, was his ability to work on ships, United States ships, looking at what was going on. But in the closing argument, you did, in fact, take the court up on its suggestion, did you not, and argued to the jury the very point that you're making here. Because I had to. We had no evidence. I'm not saying it's bad. I'm just saying that's what you did. I mean, we had no choice, because we had two jury instructions. We had brought forth evidence of the major life activity manual tasks. That's how we pled the case. We had, and there's another issue, too, that I want to get to that's really important. But we did not, we were not prepared to have to argue the other issue at the time we tried the case, of saying that he could go across this broad spectrum and get jobs. Of course, we had to say it. It was in there. Is that what the pride argued, that he, even if he couldn't do the manual, then they fell back and relied on instruction 18? Yes, they did. They said he can get a job anywhere. And he could get a job. He could work at McDonald's. He could do those things. But he worked on a ship, loading ships for several years. He made good money doing that. Then the doctor gave him a note. He had to have an MRI. He had a torn ligament, and he was supposed to get less work. I need to go on to a second issue. Okay. Well, your time is up. We've asked you some questions. We'll give you a little bit of extra time in rebuttal. But let's hear from the pride, and then we'll give you an opportunity to cover your second point. Good morning, Your Honors. Todd Bundell on behalf of Pride Industries, Incorporated. I want to start by looking at instruction number 15, which defines disability. And it defines it as a disability under the ADA is a physical or mental impairment that substantially limits one or more of the major life activities of such individual. And then it lists, it gives a laundry list of the types of major life activities that might qualify, and they include things such as walking, sleeping, seeing, hearing. And among this laundry list are two that are important in this case, one of which is manual tasks and one of which is working. Now, importantly, though, both the jury instructions and the verdict form are very clear that plaintiffs only have to prove one or more of these limitations. And I think what Carvajal is trying to say is that somehow by instructing on the definition, by giving definitions to manual tasks and working both, that there's a risk the jury only considered working, decided that Mr. Carvajal was a disabled person. That he was not limited in his ability to work as defined under the ADA, and then didn't even consider the possibility that Carvajal might have been limited under the definition of manual tasks. And if you look at the instructions and the verdict form, there's simply no risk that the jury did that, because the jury was required to consider one or more of the limitations that were defined. And our case law indicates that we're supposed to, if you will, construe what the jury did as having followed instructions and understood the instructions. Exactly, Your Honor. We assume that the jury followed the instruction. The instruction here did require them to look at one or more of the major life activities. And defense counsel, by the way, plaintiff's counsel wasn't as clear about this in his closing argument. But defense counsel was very clear to tell the jury that you have to first look at manual tasks and consider that. Well, I forget the order in which she did it, but it was very clear that you have to look at both. Is he limited in his ability to work, or is he limited in his ability to do manual tasks? And if they prove either one of those, then he's disabled under the law. But defining working, there's no risk that simply including instruction number 18 would have risked the jury just stopping and saying, well, he's not limited in this major life activity of working, and so we'll just check no and end the case. There's just no reason to believe that. And I think that Mr. Carvajal's, the counsel's argument before this Court illustrates just why the working definition was necessary in this case. Because in the early part of his argument, he said, well, Mr. Carvajal wasn't able to work at this job. He wasn't able to work on the stairs. And that was the theme of their case, is that he couldn't work on the stairs, he couldn't work at this particular aspect, one particular aspect of this job. And so there's a risk if the jury just sees this laundry list of things in major life activities included in instruction number 15. And it includes working. Well, without a definition of what working means under the statute, they might say, well, he can't work one aspect of this job, and therefore he's disabled. But in fact, that would be an erroneous interpretation of the law. Because the law requires in order to be disabled under the major life activity of working, you have to be precluded from working a broad range of jobs. So that's why defense counsel asked for this instruction, is to make sure that the jury understood that when Mr. Carvajal's counsel got up and said, well, he can't work. He can't work on the stairs. He can't work on this aspect of his job at Pride. We want to tell the jury, maybe that's the case, but that doesn't make him disabled under the definition of working, as stated in the undisputedly correct instruction in number 15. And I assume that counsel is going to argue a couple of the other things. Counsel, that both sides wanted jury instruction number 15, and that there was agreement as to the special verdict form? Yes, Your Honor. Well, number 15 and number 18, all of these were actually included in the initial joint jury instructions that were proposed by both parties. But then toward the end of the case. Right, when it came time to basically settle the instructions. Mr. Carvajal did object to number 18, which is the work as a major life activity. He did object to that. And does the commentary suggest that you shouldn't give 18 and 19 together? Well, what the commentary suggests, if you read it carefully, is that working, from the plaintiff's perspective, working should be a last-ditch effort to prove disability, because there are some problems with it. But it doesn't preclude giving working in order to ensure, as in our case, that the jury is not confused and thinking working is more narrow than it actually is. I'm not sure that that made sense. If a plaintiff is asserting working as a disability. If his claim was limited to manual labor, then why did you need to narrow it, clarify what working did? Because that was done in 15, as manual labor would count as a life activity. And that was the only life activity he was focused on. So why the or more? Well, because it's not clear from the jury's perspective that manual task is the only one that he's focused on. Because if you look at the transcripts of the trial, he repeatedly argues to the jury and Carvajal testifies repeatedly, I'm unable to work on the ladders. And so once working is included in instruction number 15, well, then you've got to tell the jury what that means, or else there's a risk that the jury will say, well, he can't work on the ladder, so he must be, according to jury instruction 15, disabled from working. And that would actually be a misinterpretation of the law on the jury's part, which is why the trial court recognized the need to give instruction number 18. You know, I have about three minutes left, and I assume that plaintiff's counsel is now going to argue some of the other issues in the case. So why don't I take a couple minutes to at least address, for example, the OFCCP's notification of violation letter, which the district court excluded under Gilchrist. I think it's the district court did exactly what this court in Gilchrist told it to do, which is this is a notification of violation letter. It's not per se admissible. You have to weigh the probative value against the possible prejudice. Here, the probative value was slight, and the prejudice, the possible prejudice, as Gilchrist even noted, that the jury would just defer to the conclusions of the agency is substantial. And so the district court properly excluded that. And we review that for what? Abuse of discretion. And there's no prejudice either, because here the jury decided this issue on the question of disability. And the only thing the OFCCP letter said about Mr. Carvajal's disability is that he had one. They didn't explain how they reached that conclusion, what evidence there was of that. And so the only thing the jury could have looked to that letter for with regard to Mr. Carvajal's disability would be to say, well, they concluded it, we must too, which would be an improper inference. So there's really no harm in excluding it. And again, the other testimony of the other two witnesses and Ms. Vasquez's testimony, again, it's an abuse of discretion standard. I'll point out that Ms. Vasquez had nothing to say with regard to Mr. Carvajal's disability. She disclaimed any knowledge whatsoever of his knee condition, so the exclusion of her... Was that the witness that wasn't disclosed until after trial started or shortly before trial started? I forget which now. What's that, Your Honor? I'm sorry. Yes, Ms. Vasquez. That was the late disclosure, and they tried to bring it in as impeachment evidence, and the district court excluded on numerous grounds, all of which we believe are proper. And even if it was some sort of abuse of discretion, it couldn't have been prejudicial because Ms. Lynch had nothing to say about Mr. Carvajal's disability. She disclaimed any knowledge of it. So on all grounds, it was proper, and it couldn't have been prejudicial in any event, unless the court has any questions at all. I don't think so. Thank you very much. Counsel, we'll give you a minute and a half rebuttal. I know you'll use it prudently. Thank you, Your Honor. Your Honor, it's important to note, first of all, that the EEOC came in and agreed with everything that Mr. Carvajal... We've got a time problem here. A minute and a half. Once you get that done, I'll let you know. Okay. We want 1-3-0. Okay, that's fine. Go ahead. Let's start him with a minute again. We're running down here. So give him a minute and then pick up and give him a half minute. Your Honor, I think it's very important to focus on the pattern jury instructions and what they say, and not just ask somebody what they want you to hear. And this is it. I'm reading directly from it. It says, indeed, even the EEOC has expressed reluctance to define major life activities to include working, and has suggested that working be viewed as a residual life activity, considered as a last resort only emphasized if an individual is not substantially limited in what they do. And that was kind of the case here, right? He's had a knee injury, couldn't work on the ladder. But he could go work at McDonald's, he could do certain other things. Well, he... No, I disagree. Because, and respectfully so. My interpretation of that is that the court or that jury instruction shouldn't have been in there. With respect to the other issues, there were witnesses that wanted to come in from the EEOC. We received there a copy of the EEOC determination, which there was also a full investigation that... But, counsel, surely you can understand why under Rule 403 the district judge wanted that out. It's going to usurp the jury function, basically. That was highly prejudicial, and we review that for abuse of discretion. That can't be your best argument, is it? But, Your Honor, if I may, it could have been done in such a way that the people who did the investigation could have testified, and not shown the report at all, but could have testified factually as to what happened. That was... And I'm so sorry to interrupt, but I know I'm just running out of time. We're a year out of time, so... I think it's really important, because it is impeachment. Impeachment's never collateral. And, you know, under 404B, it would go to knowledge, absence of mistake, mode of planning, preparation, identity, intent, and it would tell the jury that everything we tried was correct, and we only got that report shortly, a couple days, maybe a week before we went to trial, and they had it the whole time and said they didn't. I think we're done. Thank you very much, counsel.
judges: Fisher, M. Smith, Nguyen